McGEE, Chief Judge.
 

 *634
 
 John Henry Lamb, Jr., Alma Lamb Roberts, and Kay Lamb Lunsford ("Plaintiffs" or "the Lambs") filed a negligence action against Alan B. Styles Land Surveying, PLLC and its owner Alan B. Styles (together, "Defendants") on 12 June 2017. Defendants performed a survey of a tract of real property adjoining Plaintiffs' real property in 2007 that incorrectly identified the boundary line between the properties. As a result,
 
 *635
 
 Plaintiffs filed suit against their neighbors with claims for quiet title, declaratory judgment, and trespass. The trial court in that case entered an order declaring that the area of real property in dispute was owned by Plaintiffs. Plaintiffs now seek to recover the cost of the prior litigation from Defendants, claiming that Defendants' negligent performance of the survey necessitated the litigation. The trial court entered an order on 13 November 2017 dismissing Plaintiffs' action for failure to state a claim pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6).
 

 I.
 
 Factual and Procedural History
 

 Plaintiffs were joint owners as tenants in common of 36.32 acres of real property located in Madison County ("Lamb property"). John Henry Lamb, Jr. received his interest in the Lamb property in 2011 from his mother, Kay Lamb Lunsford, who is the sister of Alma Lamb Roberts (collectively, "the Lamb sisters"). The Lamb sisters had received the Lamb property from their parents in a deed dated 9 May 1996 and recorded in Deed Book 228, Page 37 in the Madison County Registry.
 

 The Lamb sisters contracted with Dry Ridge Land Surveying ("Dry Ridge") in 2008 to survey and draft a plat of the Lamb property. During the course of the preparation of the plat, Dry Ridge discovered several other plats associated with adjoining property owners. Those plats were prepared by Defendants in 2007, at the request of William Holt and Harold Holt ("the Holts"). The plats Defendants had prepared for the Holts incorrectly depicted 17.632 acres of the Lamb property as being part of the Holts' property. The erroneous plats made by Defendants for the Holts were prepared based on statements made by the Holts to Defendants. Those plats noted that the line separating Plaintiffs' property from the Holts' property was drawn "per parol evidence from William and Harold Holt."
 

 The Lamb sisters filed an action on or around 28 October 2009 against the Holts for quiet title, declaratory judgment, and trespass. John Henry Lamb, Jr. was later added as a party to the action. During the course of that litigation, the trial court ordered a neutral surveyor to map the true boundary line between the properties. The neutral surveyor filed his survey with the trial court on 30 July 2013, matching the description set forth in Deed Book 228, Page 37, which was the deed that conveyed the property to the Lamb sisters by their parents. The trial court ordered the neutral surveyor to amend the filed survey. The amended map also showed that 17.15 acres of the disputed area was owned by the Lambs. The trial court entered an order granting partial summary judgment in favor of the Lambs, dismissing the Holts'
 

 *174
 

 *636
 
 claims to the disputed 17.15 acres, and declaring the 17.15 acres of property was owned by the Lambs.
 

 The Lambs faced financial difficulties as a result of the cost of litigation and filed a voluntary dismissal without prejudice of the remaining claims against the Holts in December 2013. The Holts voluntarily dismissed their counterclaims that had been asserted against the Lambs on 6 December 2013. The North Carolina Board of Examiners for Engineers and Surveyors ("the Board") issued a Notice of Contemplated Board Action on 13 August 2014 charging Defendant Alan B. Styles with "gross negligence, incompetence, and/or misconduct." The Board received no response from Defendant Alan B. Styles and entered a final decision and order on 16 September 2014, requiring Defendant Alan B. Styles to pay a penalty of $2,000.00 and to earn a passing grade in a professional ethics course within three months. The Board based its action on evidence showing Defendant Alan B. Styles "performed inaccurate or substandard surveys ... failed to make adequate investigation ... failed to report results of surveys in a clear and factual manner ... and failed to identify all reference sources."
 

 John Henry Lamb, Jr. also filed a new complaint against the Holts on 30 November 2015 asserting claims for quiet title and declaratory judgment. The trial court entered a memorandum of judgment and order on 27 June 2016 divesting the Holts of any right, title or ownership of the disputed property. The trial court further ordered that any purported interest arising from the disputed property be vested in fee simple in John Henry Lamb, Jr. and Alma Lamb Roberts, as tenants in common.
 

 Plaintiffs filed a complaint on 12 June 2017 asserting a claim of "Professional Negligence" against Defendants. Defendants filed a motion to dismiss on 16 August 2016 pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), for failure to state a claim upon which relief could be granted. Defendants argued that a surveyor did not owe any duty of care to adjoining property owners who had not contracted with the surveyor or who did not rely on the survey in any way. The trial court heard Defendants' motion to dismiss on 9 October 2017 and entered an order on 13 November 2017 granting Defendants' motion to dismiss. Plaintiffs appeal.
 

 II.
 
 Analysis
 

 Plaintiffs argue that the trial court erred in granting Defendants' motion to dismiss for failure to state a claim pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). We disagree.
 

 *637
 
 The motion to dismiss under [ Rule] 12(b)(6) tests the legal sufficiency of the complaint. In ruling on the motion, the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted.
 

 Kohn v. Firsthealth Moore Reg'l Hosp.
 
 ,
 
 229 N.C. App. 19
 
 , 21,
 
 747 S.E.2d 395
 
 , 397 (2013) (quoting
 
 Stanback v. Stanback
 
 ,
 
 297 N.C. 181
 
 , 185,
 
 254 S.E.2d 611
 
 , 615 (1979) ).
 

 It is well-settled that a plaintiff's claim is properly dismissed under Rule 12(b)(6) when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the claim; (2) the complaint on its face reveals the absence of facts sufficient to make a valid claim; or (3) the complaint discloses some fact that necessarily defeats the claim.
 

 Grich v. Mantelco
 
 ,
 
 LLC
 
 ,
 
 228 N.C. App. 587
 
 , 589,
 
 746 S.E.2d 316
 
 , 318 (2013) (citation omitted). This Court reviews a trial court's ruling on a motion for Rule 12(b)(6)
 
 de novo
 
 .
 

 Id.
 

 "While the concept of notice pleading is liberal in nature, a complaint must nonetheless state enough to give the substantive elements of a legally recognized claim or it may be dismissed under Rule 12(b)(6)."
 
 Raritan River Steel Co. v. Cherry, Bekaert & Holland
 
 ,
 
 322 N.C. 200
 
 , 205,
 
 367 S.E.2d 609
 
 , 612 (1988). While Plaintiffs' complaint alleged a claim for "Professional Negligence," this Court must determine whether the complaint states the substantive elements of "some legal theory, whether properly labeled or not."
 
 Harris v. NCNB
 
 ,
 
 85 N.C. App. 669
 
 , 670,
 
 355 S.E.2d 838
 
 , 840 (1987) (citing
 
 Stanback
 
 ,
 
 297 N.C. 181
 
 ,
 
 254 S.E.2d 611
 
 ). A claim of professional negligence requires plaintiff establish:
 

 *175
 
 "(1) the nature of the defendant's profession; (2) the defendant's duty to conform to a certain standard of conduct; and (3) a breach of the duty proximately caused injury to the plaintiffs."
 
 Associated Indus. Contr'rs, Inc. v. Fleming Eng'g, Inc.
 
 ,
 
 162 N.C. App. 405
 
 , 413,
 
 590 S.E.2d 866
 
 , 872 (2004).
 

 A.
 
 Duty of Care
 

 "It is fundamental that actionable negligence is predicated on the existence of a legal duty owed by the defendant to the plaintiff."
 
 Derwort v. Polk Cty.
 
 ,
 
 129 N.C. App. 789
 
 , 791,
 
 501 S.E.2d 379
 
 , 381 (1998). This Court has not yet addressed whether a surveyor owes a duty of care to adjoining landowners when performing a survey and recording
 
 *638
 
 plats. Plaintiffs argue several reasons why this Court should establish a rule that "holds licensed surveyors accountable for damages that foreseeably result from" their conduct: (1)
 
 N.C. Gen. Stat. § 1-47
 
 (6) (2017) demonstrated that the General Assembly has sought to subject land surveyors to expanded civil liability, (2) N.C. Gen. Stat. § 89C-2 and 21 N.C.A.C. 56.0701 create specific standards of care by which a land surveyor's actions may be judged, and (3) general negligence principles. Plaintiffs argue further that, even if this Court fails to recognize that surveyors owe a duty of care to adjoining landowners, Plaintiffs sufficiently alleged a breach of the common law duty to exercise ordinary care.
 

 1.
 
 N.C. Gen. Stat. § 1-47
 
 (6)
 

 "Generally, a surveyor or civil engineer is required to exercise 'that degree of care which a surveyor or civil engineer of ordinary skill and prudence would exercise under similar circumstances, and if he fails in this respect and his negligence causes injury, he will be liable for that injury.' "
 
 Fleming
 
 ,
 
 162 N.C. App. at 410
 
 ,
 
 590 S.E.2d at 870
 
 (quoting
 
 Davidson and Jones, Inc. v. County of New Hanover
 
 ,
 
 41 N.C. App. 661
 
 , 668,
 
 255 S.E.2d 580
 
 , 585,
 
 disc. review denied
 
 ,
 
 298 N.C. 295
 
 ,
 
 259 S.E.2d 911
 
 (1979) ). Plaintiffs argue that N.C.G.S. § 1-47(6) subjects land surveyors to a heightened standard of care in that N.C.G.S. § 1-47(6) creates a ten-year statute of limitations for actions "[a]gainst any registered land surveyor as defined in [N.C.]G.S. 89C-3(9) or any person acting under his supervision and control ... for economic or monetary loss due to negligence or a deficiency in the performance of surveying or platting[.]"
 
 See
 

 Duke Energy Carolinas, LLC v. Bruton Cable Serv., Inc.
 
 ,
 
 233 N.C. App. 468
 
 , 474-75,
 
 756 S.E.2d 863
 
 , 867-68 (2014). Other professional negligence claims are subject to only a three-year statute of limitations pursuant to
 
 N.C. Gen. Stat. § 1-52
 
 (2017).
 

 Plaintiffs contend that the General Assembly's decision to impose a longer statute of limitation on claims against surveyors "demonstrates North Carolina's willingness to subject the profession of land surveying to robust regulation and expanded civil liability in the interest of safeguarding property rights and public welfare." We disagree. "A statute of limitations functions to limit the amount of time that a claimant has to file an action."
 
 KB Aircraft Acquisition, LLC v. Barry
 
 , --- N.C. App. ----, ----,
 
 790 S.E.2d 559
 
 , 566 (2016). "Statutes of limitation are purely procedural bars to the bringing of claims; they 'affect only the remedy and not the right to recover.' "
 

 Id.
 

 (quoting
 
 Tipton & Young Constr. Co. v. Blue Ridge Structure Co.
 
 ,
 
 116 N.C. App. 115
 
 , 117,
 
 446 S.E.2d 603
 
 , 604 (1994) ). Therefore, the imposition of a longer statute of limitations for
 
 *639
 
 negligence claims against surveyors does not create or expand their duty of care.
 

 2. Statutory Standard of Care
 

 Plaintiffs next argue that there are both statutory and regulatory standards of care imposed upon surveyors for the protection of those who may be damaged by the surveyor's negligence under N.C. Gen. Stat. § 89C-2 and
 
 21 N.C. Admin. Code 56
 
 .1601. Courts "may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation[.]"
 
 Hall v. Toreros, II, Inc.
 
 ,
 
 176 N.C. App. 309
 
 , 317,
 
 626 S.E.2d 861
 
 , 867 (2006) (citing
 
 Hutchens v. Hankins
 
 ,
 
 63 N.C. App. 1
 
 ,
 
 303 S.E.2d 584
 
 (1983) ).
 

 N.C.G.S. § 89-C provides "[i]n order to safeguard life, health, and property, and to promote the public welfare, the practice of engineering and the practice of land surveying
 
 *176
 
 in this State are hereby declared to be subject to regulation in the public interest." Plaintiffs argue that "the legislature intended its rules on the practice of surveying to protect property interests in North Carolina." In
 
 In re Suttles Surveying, P.A.
 
 ,
 
 227 N.C. App. 70
 
 , 76,
 
 742 S.E.2d 574
 
 , 578-79 (2013), this Court acknowledged "as N.C. Gen. Stat. § 89C-2 makes clear, the Legislature intended its rules on the practice of surveying to protect property interests in North Carolina."
 

 In
 
 Fleming
 
 , the defendant surveying company, challenged the trial court's finding that the defendant "failed to meet its legal duty and failed to meet the standard of care created by N.C.G.S. § 89C-2 and N.C.G.S. § 89C-3."
 
 Fleming
 
 ,
 
 162 N.C. App. at 413
 
 ,
 
 590 S.E.2d at 872
 
 . This Court held that "[t]o the extent that [the trial court] suggests that N.C. Gen. Stat. §§ 89C-2, -3 (2003) create a specific standard of care, ... the trial court erred in relying on those statutes."
 
 Fleming
 
 ,
 
 162 N.C. App. at 413
 
 ,
 
 590 S.E.2d at 872
 
 . Therefore, to the extent Plaintiffs argue that N.C.G.S. § 89-C creates a standard of care, their argument is without merit.
 

 The regulatory provisions governing the conduct of surveyors similarly do not create a standard of care. "[A] safety regulation having the force and effect of a statute creates a specific duty for the protection of others. A member of the class intended to be protected by a statute or regulation who suffers harm proximately caused by its violation has a claim against the violator."
 
 Baldwin v. GTE South, Inc.
 
 ,
 
 335 N.C. 544
 
 , 546,
 
 439 S.E.2d 108
 
 , 109 (1994) (internal citations omitted). However " 'not every statute [or regulation] purporting to have generalized safety implications may be interpreted to automatically result in tort liability for its violation.' "
 
 Toreros
 
 ,
 
 176 N.C. App. at 318
 
 ,
 
 626 S.E.2d at 867
 

 *640
 
 (quoting
 
 Williams v. City of Durham
 
 ,
 
 123 N.C. App. 595
 
 , 598,
 
 473 S.E.2d 665
 
 , 667 (1996) ). In order for the regulation to be adopted as a standard of care, the purpose of the regulation must be exclusively or in part:
 

 (a) to protect a class of persons which includes the one whose interest in invaded, and
 

 (b) to protect the particular interest which is invaded, and
 

 (c) to protect that interest against the kind of harm which has resulted, and
 

 (d) to protect that interest against the particular hazard from which the harm results.
 

 Hutchens
 
 ,
 
 63 N.C. App. at 14
 
 ,
 
 303 S.E.2d at 592
 
 .
 

 21 N.C.A.C. 56.0701 specifies the Rules of Professional Conduct for engineers and land surveyors and states:
 

 (b) A licensee shall conduct the practice in order to protect the public health, safety and welfare. The licensee shall at all times recognize the primary obligation to protect the public in the performance of the professional duties. If the licensee's engineering or land surveying judgment is overruled under circumstances where the safety, health and welfare of the public are endangered, the licensee shall inform the employer, the client, the contractor, other affected parties and any appropriate regulatory agency of the possible consequences of the situation.
 

 In
 
 Suttles Surveying
 
 , this Court noted "[t]he Legislature has expressly endowed the
 
 Board
 
 with the authority to promulgate Rules of Professional Conduct and to discipline licensees that violate those rules."
 
 227 N.C. App. at 77
 
 ,
 
 742 S.E.2d at 579
 
 . The Board has therefore established standards of practice for land surveyors in order to better regulate the practice of land surveying. 21 N.C.A.C. 56.1601. Therefore, the intent of 21 N.C.A.C. 56.0701(b) is not to create a private right of action or standard of care for surveyors, but rather to express the public policy considerations the Board will consider in promulgating and enforcing its rules.
 

 3. Negligence Principles
 

 Plaintiffs' final and primary argument is that general negligence principles necessitate that this Court establish a rule that holds licensed surveyors accountable for damages that foreseeably result to adjoining landowners from their negligent performance. We disagree.
 

 *177
 

 *641
 
 Cases involving whether a professional owes a duty of care to a third party are often analyzed based on negligent misrepresentation. Negligent misrepresentation occurs when a party justifiably relies to the party's detriment on information prepared without reasonable care by one who owed the relying party a duty of care.
 
 Howell v. Fisher
 
 ,
 
 49 N.C. App. 488
 
 ,
 
 272 S.E.2d 19
 
 (1980),
 
 disc. rev. denied
 
 ,
 
 302 N.C. 218
 
 ,
 
 277 S.E.2d 69
 
 (1981). In
 
 Raritan
 
 ,
 
 322 N.C. 200
 
 ,
 
 367 S.E.2d 609
 
 , our Supreme Court adopted the approach of the Restatement (Second) of Torts § 552 (1977) to determine an accountant's liability for negligent misrepresentation ("Restatement approach"). The Restatement approach holds:
 

 (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
 

 (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
 

 (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
 

 (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
 

 (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.
 

 Our Supreme Court in
 
 Raritan
 
 praised the Restatement approach because it
 

 recognizes that liability should extend not only to those with whom the accountant is in privity or near privity, but also to those persons, or classes of persons, whom he knows and intends will rely on his opinion, or whom
 
 *642
 
 he knows his client intends will so rely. On the other hand ... it prevents extension of liability in situations where the accountant "merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon [the audited financial statements], on the part of anyone to whom it may be repeated."
 

 Id.
 
 at 214-15,
 
 367 S.E.2d at 617
 
 . Therefore, "[i]f he knows at the time he prepares his report that specific persons, or a limited group of persons, will rely on his work, and intends or knows that his client intends such reliance, his duty of care should extend to them."
 
 Id.
 
 at 215,
 
 367 S.E.2d at 618
 
 .
 

 We find
 
 Raritan
 
 's approach beneficial in assessing whether a land surveyor can be held liable for negligent misrepresentation by an adjacent landowner. Similar to an accountant, surveyors have little control over the distribution of their surveys once provided to their client. Surveyors also specifically contract with individual clients to perform their surveys. Therefore, applying the Restatement approach appropriately limits the scope of potential liability for surveyors.
 
 See
 

 Ballance v. Rinehart
 
 ,
 
 105 N.C. App. 203
 
 , 207-08,
 
 412 S.E.2d 106
 
 , 109 (1992) (extending
 
 Raritan
 
 's rationale to real estate appraisers).
 

 Applying this standard to the present case, Plaintiffs have failed to sufficiently allege that they are within either category of persons that the Restatement approach identifies: (1) the class of persons whose benefit and guidance Defendants intended to supply the survey, or that Defendants knew that the Holts intended to supply it to Plaintiff, or (2) Defendants or the Holts intended Plaintiffs to rely on the survey in a transaction. Therefore, Plaintiffs failed to allege a valid claim for negligent misrepresentation.
 

 Plaintiffs argue that the cause of action of negligent misrepresentation "has no application under the facts of the instant case," because "[t]here is no allegation that ... [P]laintiffs relied on [D]efendants' survey work to their detriment." Instead, Plaintiffs argue "[a] third party who might be affected
 
 *178
 
 by negligence of a surveyor can still bring a suit against the surveyor for pecuniary harm." In support, Plaintiffs cite
 
 Davidson
 
 ,
 
 41 N.C. App. at 666
 
 ,
 
 255 S.E.2d at 584
 
 , which held "[t]he law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm and calls a violation of that duty negligence."
 

 In
 
 Davidson
 
 this Court examined whether two defendants - an architect and an engineering firm - were liable for damages sustained by
 
 *643
 
 the plaintiff. In the portion quoted by Plaintiffs in the case before us, this Court was addressing the architect's liability and stated:
 

 An architect, in the performance of his contract with his employer, is required to exercise the ability, skill, and care customarily used by architects upon such projects.
 
 Where breach of such contract
 
 results in foreseeable injury, economic or otherwise,
 
 to persons so situated by their economic relations, and community of interests as to impose a duty of due care
 
 , we know of no reason why an architect cannot be held liable for such injury. Liability arises from the negligent breach of a common law duty of care
 
 flowing from the parties' working relationship
 
 . Accordingly, we hold that an architect in the absence of privity of contract may be sued by a general contractor or the subcontractors working on a construction project for economic loss foreseeably resulting from breach of an architect's common law duty of due care in the performance of his contract with the owner.
 

 Id.
 

 at 667
 
 ,
 
 255 S.E.2d at 584
 
 (emphasis added). This Court has subsequently interpreted
 
 Davidson
 
 to require some "working relationship" or "community of interests" between a plaintiff and defendant.
 
 See
 

 Pompano Masonry Corp. v. HDR Architecture, Inc.
 
 ,
 
 165 N.C. App. 401
 
 , 409,
 
 598 S.E.2d 608
 
 , 613 (2004). Critically, in addressing the engineering firm with whom the plaintiff had no contractual relationship in
 
 Davidson
 
 , this Court applied the Restatement approach discussed above requiring reliance.
 
 41 N.C. App. at 668-69
 
 ,
 
 255 S.E.2d at 585
 
 .
 

 Plaintiffs argue that this Court should apply a six-factor balancing test outlined in
 
 United Leasing Corp. v. Miller
 
 ,
 
 45 N.C. App. 400
 
 , 406-407,
 
 263 S.E.2d 313
 
 , 318 (1980) in this case. This Court has previously acknowledged that:
 

 [U]nder certain circumstances, one who undertakes to render services to another which he should recognize as necessary for the protection of a third person, or his property, is subject to liability to the third person, for injuries resulting from his failure to exercise reasonable care in such undertaking.
 

 Condominium Assoc. v. Scholz Co.
 
 ,
 
 47 N.C. App. 518
 
 , 522,
 
 268 S.E.2d 12
 
 , 15 (1980). However, the extent of such a duty is limited.
 
 United Leasing
 
 enumerated six factors to determine "[w]hether or not a party has placed himself in such a relation with another so that the law will
 
 *644
 
 impose upon him an obligation ... to act in such a way that the other will not be injured[,]" including:
 

 (1) the extent to which the transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm.
 

 United Leasing
 
 ,
 
 45 N.C. App. at 406-07
 
 ,
 
 263 S.E.2d at
 
 318 (citing
 
 Petrou v. Hale
 
 ,
 
 43 N.C. App. 655
 
 ,
 
 260 S.E.2d 130
 
 (1979),
 
 dis. rev. denied
 
 ,
 
 299 N.C. 332
 
 ,
 
 265 S.E.2d 397
 
 (1980) ).
 

 In addressing the first factor, "our courts have generally focused on whether the attorney's (or other professional's) conduct, based on a contractual agreement with the attorney's client, was intended or likely to cause a third party to act in reliance on the deficient service performed by the attorney for his client."
 
 Leary v. N.C. Forest Products, Inc.
 
 ,
 
 157 N.C. App. 396
 
 , 405,
 
 580 S.E.2d 1
 
 , 7 (2003). Without an allegation in the complaint that a defendant's action "induced any action on the part of the plaintiff
 
 in reliance
 
 on the [defendant's] conduct[,]" "plaintiff has failed to state a claim upon which relief can be granted[.]"
 

 Id.
 

 (emphasis added). Therefore, Plaintiffs' argument that their "theory of liability
 
 *179
 
 does not require reliance" is incorrect. Plaintiffs have failed to identify a duty of care that a surveyor owes to a non-reliant third party.
 

 B.
 
 Damages
 

 Even assuming
 
 arguendo
 
 Plaintiffs had sufficiently alleged that Defendants owed a duty of care, Plaintiffs failed to sufficiently allege damages attributable to Defendants' actions. Plaintiffs' complaint alleged Defendants' negligent acts caused
 

 Plaintiffs to suffer and incur the following injuries and damages:
 

 a. Reasonable attorneys' fees for resolving the cloud on Plaintiffs' title, contesting the adverse claims of ownership asserted by the Holts, and correcting the misrepresentation appearing of record in the public land registry;
 

 b. Court costs and other expenses, including, but not limited to, expert witness fees and recording fees,
 
 *645
 
 arising from the First Litigation and the Second Litigation; and
 

 c. Costs for producing corrective surveys and plats of the Plaintiffs' real property.
 

 Plaintiffs' alleged damages were all costs expended in connection with their prior litigation against the Holts for quiet title, declaratory judgment, and trespass.
 

 At common law neither party recovered costs in a civil action and each party paid his own witnesses. Today in this State, all costs are given in a court of law by virtue of some statute. The simple but definitive statement of the rule is: Costs, in this state, are entirely creatures of legislation, and without this they do not exist.
 

 City of Charlotte v. McNeely
 
 ,
 
 281 N.C. 684
 
 , 691,
 
 190 S.E.2d 179
 
 , 185 (1972) (citations and quotations omitted). Plaintiffs fail to cite any statute authorizing them to recover their court costs and attorney's fees in the present case.
 

 C.
 
 Causation
 

 Dismissal of Plaintiffs' claims was also proper because Plaintiffs failed to sufficiently allege that Defendants' survey was the proximate cause of their damages. In
 
 Arnesen v. Rivers Edge Golf Club & Plantation, Inc.
 
 ,
 
 368 N.C. 440
 
 ,
 
 781 S.E.2d 1
 
 (2015), our Supreme Court addressed whether real estate appraisers who conducted appraisals on behalf of a bank could be held liable to future purchasers if the appraisals were incorrect. The Court held that the plaintiffs had failed to established that the appraisers owed them a duty of care.
 
 Id.
 
 at 454,
 
 781 S.E.2d at 11
 
 . However, the Court further held that, even if the appraisers owed a duty of care to potential purchasers, the plaintiffs had failed to establish that the faulty appraisals were the proximate cause of their damages because the plaintiffs failed to allege that they had relied on the appraisals in deciding to purchase or finance their purchases of the real estate.
 
 Id.
 
 at 455,
 
 781 S.E.2d at 11
 
 .
 

 In the case before us, Plaintiffs do not allege that they relied on the erroneous surveys. Plaintiffs also do not allege that the Holts or anyone else acted in reliance on the erroneous surveys in a manner that caused damages. Instead, Plaintiffs claim that Defendants' actions were the proximate cause of their damages because Defendants "wrongfully created a cloud on the title to Plaintiffs' real property," which "necessitated" their litigation expenses. "A cloud upon title is, in itself, a title, or
 
 *646
 
 encumbrance, apparently valid, but in fact invalid. ... A cloud [on title] may be created by anything that may be a muniment of title or constitute an encumbrance."
 
 York v. Newman
 
 ,
 
 2 N.C. App. 484
 
 , 488,
 
 163 S.E.2d 282
 
 , 285 (1968).
 

 In the case before us, there are doubts about whether the recorded plat was "apparently valid" as Defendants failed to conduct a complete survey and noted the deficiency of their work directly on the plat with the annotation "per parol evidence from William and Harold Holt." Nevertheless, a muniment of title is "[d]ocumentary evidence of title, such as a deed or a judgment regarding the ownership of property." Black's Law Dictionary 1043 (8th ed. 2004). The deficient nature of Defendants' survey would make the recorded plats insufficient evidence of title and would not create a cloud on title.
 
 See
 

 Parrish v. Hayworth
 
 ,
 
 138 N.C. App. 637
 
 , 640-41,
 
 532 S.E.2d 202
 
 , 205 (2000) (noting that where a
 
 *180
 
 plat does not sufficiently describe an encumbrance it is void). Therefore, Plaintiffs failed to allege how Defendants' conduct was the proximate cause of Plaintiffs' damages. If a party were to rely on Defendants' plats to encroach on Plaintiffs' property rights, then liability would be with the encroaching party rather than Defendants.
 

 III.
 
 Conclusion
 

 A surveyor does not owe a duty of care to landowners that are not in privity with the surveyor and who do not rely on the survey. Additionally, Plaintiffs failed to sufficiently allege that they were damaged by Defendants' conduct. The only damages alleged were litigation costs of an action in which Defendants were not a party. Plaintiffs failed to cite any statute that would entitle them to recover their litigation costs from Defendants. Finally, where Defendants relied on their client's statements in ascertaining the boundary line between the properties and conspicuously noted such on the plat, Defendants were not the proximate cause of Plaintiffs' alleged damages. Therefore, Plaintiffs failed to sufficiently allege a claim for negligence against Defendants. For these reasons, the trial court did not err in granting Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).
 

 AFFIRMED.
 

 Judges DIETZ and ARROWOOD concur.